# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IVAN OJEDA, individually and on behalf of all others similarly situated, | Case No. 21-61071-CIV-ALTMAN/Hunt |
| Plaintiff, | |
| vs. | |
| KALLBERG INDUSTRIES, LLC, | |
| Defendant. | |

## AGREED MOTION FOR APPROVAL OF SETTLEMENT AND DISMISSAL WITH PREJUDICE AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Ivan Ojeda, individually and on behalf of all others similarly situated (Ojeda) and Defendant, Kallberg Industries, LLC (Kallberg) (collectively with Ojeda, the "Parties"), submit this Agreed Motion for Approval of Settlement and Dismissal with Prejudice and request that this stipulated Motion be granted, that the Court make a fairness finding approving the terms of the Parties' settlement of the above-captioned matter, and dismissing this case with prejudice. The Settlement Agreement has been attached to this Motion for the Court's review as Exhibit "1."

1. **FACTUAL AND PROCEDURAL BACKGROUND**

The case arises in connection with relief work performed after Hurricanes Irma and Maria devastated Puerto Rico and the Virgin Islands. FEMA and other governmental entities implemented programs to provide for aid and repairs. Louis Berger Group was awarded multiple contracts for power generation and repair pursuant to those programs and subcontracted out the work for many of its obligations. These subcontractors hired workers in Puerto Rico and the Virgin Islands to perform repairs, including working as drivers, laborers, carpenters, and mechanics, performing inspection, repair, and preventive and corrective maintenance for diesel or electric generators. The workers they

1

hired allege they regularly worked in excess of 40 hours per week, but were not paid overtime or other benefits required by state and federal law.

The action against Kallberg originated in New Jersey. A plaintiff named Ivan Ojeda filed a case against Louis Berger, Kallberg, and another of its subcontractors on December 14, 2018. *See Ojeda v. Berger Group (Domestic), Inc., et al.*, Case No. 2:18-CV-17233(KM)(JBC) (D.N.J. filed Dec. 24, 2018) at Dkt. No. 1. On March 19, 2019, a First Amended Complaint was filed adding numerous other subcontractors as defendants. *Id.* at Dkt. No. 50. After motions to dismiss by Kallberg and others, the plaintiffs amended the complaint again, this time adding a named plaintiff for every defendant. Those plaintiffs (including Ojeda) brought this class and collective action on behalf of relief workers who were paid a day-rate or hourly rate plus fringe benefits by Louis Berger and its subcontractors in violation of the Fair Labor Standards Act (FLSA) and the laws of Puerto Rico and the U.S. Virgin Islands. *Id.* at Dkt. No. 235. They allege Louis Berger and its subcontractors jointly employed them and owe them wages. *Id.*

For its part, Kallberg disputed it violated any law, and contested that the District of New Jersey had personal jurisdiction over it. It moved to dismiss pursuant to Rule 12(b)(2). This motion was granted in part, and the claims of Plaintiff Ojeda and the other opt-ins who worked for or through Kallberg were transferred to this District. Prior to the motion being granted in part, extensive discovery was conducted, thousands of documents were produced, and numerous depositions were conducted throughout the country. Once the case was transferred, the Parties continued to engage in motion practice and formal/informal discovery regarding the claims and defenses at issue, certification, and damages.

The Parties mediated with an experienced wage-and-hour mediator, Carlos Burruezo. Following mediation, the Parties' communications stalled and Ojeda moved for Class Certification. Afterwards, the Parties agreed to conduct a follow up mediation with Magistrate Hunt. After the

mediation and continued negotiation, the Parties reached a settlement in principal. Substantial negotiations were required relating to the specific terms of the Agreement, before ultimately finalizing the Settlement Agreement on August 8, 2022.

## 2. LEGAL PRINCIPLES

Pursuant to the case law regarding settlement of FLSA claims, there are two ways in which claims under the Fair Labor Standards Act (FLSA) can be settled and released by employees. First, § 216(c) of the FLSA allows employees to settle and waive their claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. *See* 29 U.S.C. 216(c); *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under section 216(b) of the FLSA, an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement and the district court enters an Order approving the settlement. *Id.*; *see also Sculte, Inc. v. Gandi,* 328 U.S. 108 (1946); *Jarrad v. Southeastern Shipbuilding Corp.,* 163 F.2d 960, 961 (5th Cir. 1947). In detailing the circumstances justifying court approval of an FLSA settlement in a litigation context, the Eleventh Circuit has stated as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores,* 679 F.2d at 1354.

The settlement of the instant action involves a situation in which the Court may approve the Parties' settlement to resolve and release the Ojeda and the Class Members' (collectively "Plaintiffs") FLSA claims against Kallberg. The proposed settlement arises out of an action brought by the Plaintiffs

against their former employer, which was adversarial in nature. During the litigation and settlement of this action, Plaintiffs and Kallberg were represented by experienced counsel.

### 3. THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED

#### A. The Settlement Represents a Reasonable Compromise

##### i. There is no fraud or collusion

Courts apply a "strong presumption of fairness to FLSA settlements." *Giagnacovo v. Covanta Enviro. Soluts.*, No. CV 119-066, 2020 WL 1974400 (S.D. Ga. Apr. 24, 2020). The Settlement was reached with the assistance of an extremely knowledgeable Magistrate Judge, a veteran mediator, and experienced wage and hour counsel. This favors approval and indicates the absence of any fraud or collusion.

##### ii. The complexity, risk, expense, and likely duration of the litigation

Further litigation of this case without a settlement would be lengthy and expensive for both Parties with no meaningful certainty as to which side would prevail on liability. Here, the Settlement Agreement resolves a bona fide dispute. In the instant case, the Parties contested the claims and defenses asserted. Plaintiffs alleged they were misclassified as independent contractors, and either paid a day rate regardless of the number of hours worked during a week, or paid an hourly rate plus fringe benefits while staffed to Louis Berger. Kallberg denies that it violated the FLSA and that it owes any additional wages to any of the Plaintiffs. Specifically, Kallberg contends that not all of the Plaintiffs were its employees, were properly classified as independent contractors, and that it changed its pay practice in February of 2018 so many of the Plaintiffs should recover nothing. Further, Kallberg maintains that all but roughly 60 Plaintiffs participated in a Department of Labor (DOL) settlement and released their wage and hour claims. Plaintiffs maintain that if they participated in a DOL settlement, it would have an offset of their damages. Plaintiffs also contend that the DOL settlement

did not release any state law claims. Last, Plaintiffs argue that Kallberg's "change" in pay practice only disguised the day rate.

The Parties believe that this settlement is fair given the records exchanged and the Parties inability to agree on damages, Kallberg's various affirmative defenses, the merits of the case, the vagaries of trial, unsettled case law regarding the salary basis test and the reasonable relationship, and the potential length of litigation. Under these circumstances, the undersigned find the settlement reasonable, especially considering the vagaries and unknown length of further litigation.

If this case was not contemporaneously settled, there would undoubtedly be extensive future work to come, including conditional certification and class certification for the other workers sourced to Louis Berger through Kallberg, subpoenas to various subcontractors and Louis Berger itself, dispositive motions, depositions, associated discovery disputes, potential interventions, questions regarding applicability of the FLSA, good faith, willfulness, decertification, expert witness discovery, Daubert motions, pretrial motions, trial, and potential appellate issues. Accordingly, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and (Plaintiffs in particular) recognized that their settlement represented a compromise of the range and uncertainty of their damages especially considering that certain Plaintiffs entered into a DOL settlement.

This settlement is in the best interest of both Plaintiffs and Kallberg. The Parties disputed whether class and collective treatment of Plaintiffs' FLSA and state law claims were appropriate in this matter, and whether Plaintiffs were entitled to liquidated damages. If the matter was not resolved by settlement, there is a risk Plaintiffs would be unable to obtain class or collective action, and even if they did, that Kallberg would likely move for decertification. Kallberg denies the class is proper and denies this Court has jurisdiction under the Class Action Fairness Act. These disputes would have been time-consuming and expensive for all Parties, and should Plaintiffs have ultimately prevailed, the additional time prior to Plaintiffs receiving relief, if any, could have been substantial.

### iii. The stage of the proceedings and amount of discovery completed

While there have been numerous filings in this District, this litigation has been ongoing for more than three years, with the parties extensively involved in discovery related to the claims, underlying work and contracts, and communications. Prior to the filing claims, Plaintiffs' Counsel performed extensive research and investigation regarding the pay practices and potential liability of Kallberg, its connection with Louis Berger, the potential for settlement, and whether Kallberg had acted in good faith (or willfully) in implementing its compensation policy. The Parties worked to resolve various complex, disputed issues, such as issues regarding jurisdiction, identification of potential class members, took depositions, engaged in written discovery, produced hundreds of documents, had multiple discovery disputes, disputed whether certain Opt-in Plaintiffs released Kallberg as part of a Department of Labor (DOL) investigation, and maintained differing views on damage calculations. Kallberg provided contract information, communications, and significant pay data, master services agreements, correspondence, and invoices. Plaintiffs' Counsel reviewed thousands of pages of document production. There was significant uncertainty whether Plaintiffs would prevail and, even if so, whether the state of the law was such that Plaintiffs would be entitled to a third year of liability or even liquidated damages. This factor weighs in favor of settlement.

### iv. The strength of Plaintiffs' case and probability of success on merits

Liability was vigorously disputed in this case. Kallberg contends that Plaintiffs were properly paid after the DOL investigation. Plaintiffs contend that their compensation did not change based on the DOL investigation and that Kallberg simply disguised its day rate pay practice. Plaintiffs additionally acknowledge Kallberg has a significant chance dismissing some or all of their claims due to the payment of back wages through the DOL investigation. Therefore, by settling, Plaintiffs avoid the risk of an unfavorable verdict or summary judgment decision. If this case were to proceed, there is a substantial risk that Kallberg would prevail, and Plaintiffs would recover nothing.

### v. The range of possible recovery.

The damages in this matter are highly disputed. Plaintiffs could, of course, recover nothing. Plaintiffs' initial damage model presumed the DOL settlement did not preclude any Plaintiffs' claims, and presumed the change in pay practice was a disguised day rate. However, if the DOL settlement released all the claims of the signatory Plaintiffs, their damages would be zero. And if Kallberg's change in pay was proper, the remaining Plaintiffs would only be owed money for hours worked over 12 hours in a day. Under this initial damage model, the gross settlement represents approximately 15% of the three-year damages. **Ex. 2** at ¶¶ 20-21. However, as addressed above, this model relied on multiple presumptions, likely resulting in inflated damages. The recovery, in actuality, is much higher. *Id.* The average settlement amount per class member is roughly $1,400. *Id.* This places recovery by the Plaintiffs well within the normal range for settlements of this nature which have been approved by courts nationwide. *Id.* "The Court is 'entitled to rely on the judgment of experienced counsel' to evaluate a proposed settlement, and 'absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel.'" *Hood v. Uber Technologies, Inc.*, 1:16-cv-998, 2019 WL 93546, at *5 (M.D.N.C. Jan. 3, 2019) aff'd, 780 Fed. Appx. 25 (4th Cir. 2019).

The Settlement with Kallberg constitutes an outstanding result which is more than fair and reasonable for the Plaintiffs. The Settlement will provide individual settlement payments to the Plaintiffs representing a percentage of their claimed damages as calculated by Plaintiffs' Counsel. The proposed method of allocation (individual payments proportionate to their claimed damages) is fair to all. *See Lazy Oil Co. v. Witco*, 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to

7

be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a potential trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000) (citing study conducted by the National Economic Research Associates: "the average result achieved for class members was only 7% to 11% of claimed damages.").

This result provides Plaintiffs a certain and substantial payment and averts years of continued complex, time-consuming, and expensive litigation, with no assurance of success. The quality of this result speaks for itself, and no further analysis, or speculation about net expected value, is required. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-864 (7th Cir. 2014) (where "the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated" the district court was not required to quantify the net expected value of continued litigation). This is a favorable result considering the legality of the pay practice was highly disputed and Plaintiffs could have recovered nothing. This factor strongly supports approval.

4. **ATTORNEYS' FEES AND COSTS**

Class Counsel will receive $100,000.00 as payment of fees and up to $10,000.00 for reasonable costs. Before beginning an analysis of whether to approve the agreed upon fee, it is important to note the Parties negotiated attorney's fees separately from the amount Class receives. The amount requested for attorneys' fees is fair and reasonable and was separately negotiated by the Parties. **Ex. 1**.

It was also agreed upon in the retainer agreement, that Counsel could separately negotiate fees sufficient to account for the risks associated with this representation. Plaintiffs' Counsel has worked without any compensation to date on the case against Kallberg, and Plaintiffs' Counsel's fee has been wholly contingent upon the result achieved. Consistent with the fee agreement between Ojeda and Class Counsel, the Parties calculated attorney's fee by *adding* of the Class's amount to the Class award to arrive at the total settlement. The Parties *did not* negotiate a total amount for the Class and subtract a percentage. Therefore, the attorney fees negotiated by the Parties never reduced the Class's award. As a necessary corollary, a decrease in the fee award will not result in an increase in the amount of the Net Settlement Fund. Perhaps more to the point, the attorneys' fees called for under the Settlement are reasonable and there is no reason to reject the parties' agreement on this point.

Supreme Court precedent not only permits but endorses settlement of attorney's fees in aggregate litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."). Recent FLSA authority suggests that when they do under circumstances that exist here, that should end the matter. *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("parties [are] entitled to settle the attorney fee issue, and no law g[ives a] district court authority to interfere with that unconditional right"). The Parties reached the agreed upon fee after reaching a settlement that exceeds the average overtime settlement, ensures class members who decide to accept it will be paid promptly. To the extent approval is necessary, it should be given here.

There is no benefit to the Plaintiffs if the Court were to reduce the amount of attorneys' fees. As a result, "sliding plaintiffs' counsel's fee … down by even large amounts" would merely "increase the total funds that revert to [Kallberg], but would not lower or raise the recovery of any … Plaintiff by even a penny." *Warren v. Cook Sales, Inc.*, No. CV 15-0603-WS-M, 2017 WL 325829, at *8 (S.D. Ala. Jan. 23, 2017) (awarding the % fee requested in the settlement agreement).

Any reduction in the fee, therefore, would not balance the scales or increase the benefits to the Plaintiffs but instead would merely be punitive against Plaintiffs' Counsel. Nothing in the history of this action would justify such a measure against counsel, nor has any party argued for a reduction. Indeed, every party to this litigation bargained for this result. Any concern by the Court that this Settlement is made at the expense of the Plaintiffs is allayed by the terms of agreement and the efforts of all Parties.

"While attorney's fee settlements in FLSA cases may be problematic … where the fee award adversely impacts the plaintiffs' recovery, no such concerns exist here." *Warren*, 2017 WL 325829, at \*8. "As such, the sound policy justifications counseling in favor of judicial reasonableness review of the attorney's fee portion of FLSA settlements are not implicated." *Id.* The agreed upon fee should be approved.

Regardless, due to the length of the pending litigation, complexity, extensive motion practice, and discovery conducted, Plaintiffs' Counsel's lodestar well exceeds the separately agreed upon fee award. **Ex. 2**, ¶¶ 22 - 24. Almost all of Plaintiffs' counsel's cases have been taken on pure contingency, including all out-of-pocket costs and expenses. This highlights the risks associated with wage and hour matters and illustrates that Plaintiffs' counsel stood to gain nothing in the event the case was unsuccessful. Moreover, in Plaintiffs' Counsel's experience, wage and hour cases are inherently high-disk due to often unexpected closings and collection issues.

As such, in reviewing Plaintiffs' Counsel's fees in this matter and the risks involved, it is clear that they are both fair and reasonable. Moreover, under the "lodestar" method, the Court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the [plaintiff] and then multiplies that figure by an appropriate hourly rate." *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Even under the "lodestar" method, Plaintiffs' Counsel's fee award is more than reasonable, as they currently have a lodestar well over the amount agreed upon.

The Parties did not negotiate a total amount for the Plaintiffs and subtract a percentage. Therefore, the attorney fees negotiated by the Parties never reduced the Plaintiffs' award. As a necessary corollary, a decrease in the fee award will not result in an increase in the amount of the Net Settlement Fund. Perhaps more to the point, the attorney's fees called for under the Settlement are reasonable and there is no reason to reject the parties' agreements on this point. *See Cruz-Vasquez v. Sanders Farms, Inc.*, No. CV 615-048, 2016 WL 4492864, at *2 (S.D. Ga. Apr. 21, 2016) (citing *Hill v. Unifirst Corp.*, No. 6:13-cv-624, 2013 WL 4495130, at *3 (M.D. Fla. Aug. 20, 2013) (providing that attorneys' fees and costs were reasonable because they were agreed upon separately and they represented the full amount plaintiff's counsel would be paid); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009)).

Supreme Court precedent not only permits but endorses settlement of attorney's fees in aggregate litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."). Recent FLSA authority suggests that when they do under circumstances that exist here, that should end the matter. *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("parties [are] entitled to settle the attorney fee issue, and no law g[ives a] district court authority to interfere with that unconditional right"). In an Eighth Circuit opinion, the Court found that "any process of judicial review and approval of stipulated attorneys' fees in the event of a settlement of civil rights litigation is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775 (8th Cir. 2018) (reversing district court's reduction of attorney fees from the agreed-upon settlement amount in an FLSA action).

To the extent approval is necessary, it should be given here.

Lastly, Plaintiffs' counsel expended more than $10,000.00 in litigation costs and expenses but has capped the amount of costs at $10,000.00. *See* **Ex. 2 ¶ 22.** This amount is reasonable considering

the case has been pending for over three years. As such, Plaintiffs' Counsels' costs are fair and reasonable and should be approved by the court.

5. **CONCLUSION**

The Parties jointly and respectfully request that this Court approve the settlement agreement of the Parties and dismiss the instant action as well as any and all other pending claims between the Parties with prejudice with the Court to retain jurisdiction to enforce the Settlement Agreement if necessary. Respectfully submitted this 24th day of August.

**MORGAN & MORGAN, P.A.**

**/s/ C. Ryan Morgan**
C. Ryan Morgan, Esq.
Florida Bar. No 15527
Morgan & Morgan, P.A.
20 N. Orange Ave., 15th Floor
Orlando, FL 32802-4979
Telephone: (407) 420-1414
Facsimile: (407) 245-3401
E-mail: RMorgan@forthepeople.com

-and-

**Michael A. Josephson**
State Bar No. 24014780
**Richard M. Schreiber**
State Bar No. 24056278
**Josephson Dunlap, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
adunlap@mybackwages.com
mjosephson@mybackwages.com
rschreiber@mybackwages.com

-and-

**Richard J. (Rex) Burch**
State Bar No. 24001807
**Bruckner Burch, pllc**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF CONFERENCE**

Counsel for Plaintiff conferred with Counsel for Defendant regarding the relief sought herein. The Parties are in agreement to the relief sought.

*/s/ Richard M. Schreiber*
Richard M. Schreiber

**CERTIFICATE OF SERVICE**

Counsel for Plaintiff served the foregoing document via ECF on all Parties.

*/s/ C. Ryan Morgan*
C. Ryan Morgan

13